**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **ABDULLAH SAHAK,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-26-1495-SLP** |
| | ) | |
| **FRED FIGUEROA, et al.,** | ) | |
| | ) | |
| **Respondents.** | ) | |

**REPORT AND RECOMMENDATION**

Petitioner Abdullah Sahak, an Afghani citizen proceeding *pro se*,[1] filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 ("Petition") challenging his detention by the U.S. Immigration and Customs Enforcement ("ICE"). (Doc. 1).[2] United States Chief District Judge Scott L. Palk referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B)-(C). (Doc. 3). In accordance with the expedited briefing schedule, (Doc. 6), Respondents timely filed a Response to the Petition.[3] (Doc. 8). Petitioner filed a reply. (Doc. 9). As fully set forth

[1] A *pro se* litigant's pleadings are liberally construed "and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *see Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). But the court cannot serve as Petitioner's advocate, creating arguments on his behalf. *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

[2] Citations to the parties' filings and attached exhibits will refer to this Court's CM/ECF pagination.

[3] The response was not filed on behalf of Respondent Fred Figueroa, Warden of Diamondback Correctional Facility, because he is not a federal official. (Doc. 8, at 1 n.1).

below, the undersigned recommends that the Petition be **DISMISSED as moot** because Petitioner is currently subject to mandatory detention.

## I. Factual Background and Procedural History

Petitioner, who is a native and citizen of Afghanistan, entered the United States on May 5, 2023, without inspection or parole. (Doc. 1, at Ex. 3, at 1; Doc. 8, at Ex. 1, at 2). On May 8, 2025, ICE placed him into removal proceedings before the Immigration Court through the issuance of a Notice to Appear and charged him as inadmissible pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) as a non-citizen present in the United States who had not been admitted or paroled. (Doc. 8, at Ex. 1, at 2). Petitioner was then released on his own recognizance. (Doc. 8, at 4). On August 15, 2023, Petitioner filed an Application for Asylum and Withholding of Removal. (Doc. 1, at Ex. 3, at 1).

On May 8, 2025, the Executive Office for Immigration Review ordered Petitioner removed for failure to comply with a directive to provide biometrics. (Doc. 8, at 4). On May 29, 2025, Petitioner appealed his removal order. (*Id.*) On September 9, 2025, ICE re-detained Petitioner at a routine check-in appointment, and he has been detained since then. (Doc. 1, at Ex. 2, at 1; Doc. 8, at Ex. 4, at 4). On April 22, 2026, the Board of Immigration Appeals ("BIA") remanded the case and reversed the immigration judge's dismissal of Petitioner's asylum petition. (Doc. 8, at 4).

---

The undersigned concludes that a separate response from Fred Figueroa is not necessary to resolve this matter.

On July 23, 2026, an immigration judge ordered Petitioner removed. (Doc. 8, at Ex. 6, at 4, 6). Any appeal of Petitioner's order of removal was due within 30 days, 8 C.F.R. § 1003.38(b)(2), *i.e.*, on August 23, 2026, but no appeal was received. (Doc. 10, at 1-2); *see also* EOIR, Automated Case Information, *at* https://acis.eoir.justice.gov/en/ (last accessed Sept. 30, 2026). Accordingly, Petitioner's order of removal is administratively final. *See* 8 C.F.R. § 1241.1(c) ("An order of removal made by the immigration judge at the conclusion of [Immigration Court proceedings] shall become final . . . upon expiration of the time allotted for an appeal if the [non-citizen] does not file an appeal within that time.").

## II. Petitioner's Claims and Respondents' Responses

Liberally construed, Petitioner alleges (1) his arrest and re-detention after previously being released on his own recognizance with no advanced notice, explanation, or opportunity to contest detention violated his right to due process; and (2) he has a protected liberty interest in remaining free from detention under the *Mathews v. Eldridge* factors. (Doc. 1, at Ex. 2, at 1-2). As relief, Petitioner requests that the Court order his immediate release or grant any other relief the court deems proper. (Doc. 1, at Ex. 3, at 1).

Respondents assert that Petitioner is subject to mandatory detention under 8 U.S.C. § 1231(a)(1). (Doc. 8, at 3). They also argue the Petition should be dismissed for failure to state a claim because (1) the Court does not have jurisdiction to review the decision to execute Petitioner's removal order; and (2) Petitioner's *Zadvydas* claim is not ripe, and even if his *Zadvydas* claim were ripe, he has failed to establish a *prima facie* case. (*Id.* at 7-10).

In Reply, Petitioner alleges there is an "absence of any individualized basis for [his] custody," but acknowledges "[m]andatory detention was not required before but according to statute is required now." (Doc. 9, at 1). Petitioner argues he should be released from custody because he was "wrongfully detained under [§] 1225" and that his eleven-month "detention has become indefinite" as it is "reasonably unlikely" for him to be removed to Afghanistan. (*Id.* at 1-4). He also alleges for the first time in Reply that his arrest was improper because he was arrested without a warrant. (*Id.* at 2).[4]

## III. Standard of Review

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[T]he primary federal habeas corpus statute, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear . . . challenges to the lawfulness of immigration-related detention." *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) ("Challenges to immigration detention are properly brought directly through habeas.").

"Mootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction." *McClendon v. City of*

---

[4] To the extent Petitioner raises this new argument in reply, it is untimely. *See SCO Grp., Inc. v. Novell, Inc.*, 578 F.3d 1201, 1226 (10th Cir. 2009) (recognizing "general rule" "that a party waives issues and arguments raised [] for the first time" in a reply brief); *Stillwater Designs & Audio Inc. v. Klein*, No. CIV-24-784-SLP, 2025 WL 365651, at *2 n.7 (W.D. Okla. Jan. 31, 2025) (declining to consider arguments raised for the first time in reply).

*Albuquerque*, 100 F.3d 863, 867 (10th Cir. 1996). "Because mootness is a matter of jurisdiction, a court may raise the issue sua sponte." *Id.*

**IV. Petitioner is Currently Within the Statutory Removal Period and Subject to Mandatory Detention.**

Prior to the entry of a final removal order, 8 U.S.C. § 1225 and § 1226 govern the detention of aliens. An alien detained under § 1226(a) is entitled to a bond hearing at which he can argue to an immigration judge that he should be released while he awaits removal proceedings because he is not a danger to others or at risk for non-appearance. *See Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention.") (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)).

"After the pre-removal period concludes, the statutory authority to detain an alien shifts to 8 U.S.C. § 1231." *Carbajal v. Holder*, 43 F. Supp. 3d 1184, 1188 (D. Colo. 2014). Under 8 U.S.C. § 1231(a)(2)(A), a non-citizen is subject to a 90-day removal period, where detention is mandatory. *Id.* at 1189 ("[W]hen an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days . . . . During the removal period, the Attorney General shall detain the alien.") (quoting 8 U.S.C. § 1231(a)). This shift from the "pre-removal" period under § 1225 and § 1226 to the "removal" period under § 1231(a) is triggered by the latest of three events:

(i) The date the order of removal becomes administratively final.

(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B). A removal order becomes administratively final "upon the earlier of (i) a determination by the [BIA] affirming such order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the [BIA]." 8 U.S.C. § 1101(a)(47)(B).

Thus, Petitioner's pre-removal-order period ended on August 23, 2026, when the period for him to appeal his removal order expired. 8 C.F.R. § 1003.38(b)(2). Therefore, Petitioner could no longer be subject to § 1226(a), but rather he is subject to § 1231(a)(2)(A), which mandates detention without bond for 90 days, or until November 21, 2026.

## V. Petitioner is Not Entitled to Habeas Relief on Any of His Claims.

### A. Petitioner's Claims Relating to His Detention Prior to His Final Order of Removal Are Moot.

"Article III of the Constitution limits federal-court jurisdiction to 'cases' and 'controversies.'" *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 160 (2016) (quoting U.S. Const. art. III, § 2). "In order to invoke federal-court jurisdiction, a [petitioner] must demonstrate that he possesses a legally cognizable interest, or personal stake, in the outcome of the action." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013) (internal quotation marks omitted). This means "an actual controversy must be extant at all stages of review." *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 67 (1997). "If an intervening circumstance deprives the [petitioner] of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be

dismissed as moot." *Genesis Healthcare Corp.*, 569 U.S. at 72 (internal quotation marks omitted). "A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012) (internal quotation marks omitted).

Prior to his removal order becoming final, Petitioner claimed that his detention violated his due process rights and he sought release from custody. (Doc. 1, at Ex. 2, at 1-2; Doc. 1, at Ex. 3, at 1). However, because he is now detained pursuant to § 1231(a)(2)(A), Petitioner is subject to mandatory detention, and he is not entitled to release. Accordingly, his claims should be dismissed as moot. *See, e.g., Quintanilla v. Figueroa*, No. CIV-26-797-G, 2026 WL 2302459, at *1 (W.D. Okla. Aug. 10, 2026) (dismissing as moot a similar petition where petitioner's order of removal became final after the petition was filed); *Singh v. Mullin*, No. CIV-26-556-D, 2026 WL 2058953, at *1 (W.D. Okla. July 16, 2026) (agreeing with magistrate judge that the Petition is moot when petitioner's BIA appeal was dismissed making his order of removal final); *Maldonado-Velasquez v. Moniz*, No. 17-1918, 2018 WL 11444979, at *1 (1st Cir. Mar. 22, 2018) ("Because Maldonado-Velasquez's order of removal is administratively final, 8 C.F.R. § 1241.1, and because the court has denied a stay of removal in his parallel petition for review proceedings, Maldonado-Velasquez is no longer being detained pursuant to the statute at the heart of his due process claim, 8 U.S.C. § 1226. *See* 8 U.S.C. § 1231(a)(1). The shift in detention authority has rendered Maldonado-Velasquez's due process claim moot."); *Carbajal*, 43 F. Supp. 3d at 1189 (collecting cases, and stating "[a]pplicant's claims challenging his mandatory detention without an individualized bond hearing during the pre-removal period

now are moot because the Board of Immigration Appeals dismissed his administrative appeal on December 27, 2013, thereby affirming the order of removal").[5]

### B. To the Extent Petitioner Raises a *Zadvydas* Claim, That Claim is Premature.

Petitioner also seeks immediate release. (Doc. 1, at Ex. 3, at 1). In some circumstances, a court can order release once a non-citizen's 90-day removal period has ended, if the non-citizen has not been removed. *Zadvydas*, 533 U.S. at 682, 687-88.

> There is no express limitation on the length of an alien's post-removal-period detention under § 1231(a)(6). But in *Zadvydas*, the Supreme Court interpreted § 1231(a)(6) narrowly and imposed an implicit reasonable time limitation on such detention to avoid any Fifth Amendment due process issues that could arise from indefinite detention. After *Zadvydas*, an alien can be detained only until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Babakhani v. Gantt*, No. CIV-26-705-SLP, 2026 WL 1822995, at *3 (W.D. Okla. June 24, 2026) (internal quotation marks and citations omitted).

However, here, Petitioner made no *Zadvydas* allegations in the Petition. Nor has he requested to amend the petition. Accordingly, the undersigned recommends the Court decline to construe the Petition as requesting release under *Zadvydas*, though Petitioner

---

[5] A court cannot "dismiss a petition as moot if (1) secondary or collateral injuries survive after resolution of the primary injury; (2) the issue is deemed a wrong capable of repetition yet evading review; [or] (3) the defendant voluntarily ceases an allegedly illegal practice but is free to resume it at any time." *Riley v. INS*, 310 F.3d 1253, 1257 (10th Cir. 2002) (internal quotation marks omitted). "However, none of these exceptions apply to [Petitioner], who has no reasonable expectation that he will once again be detained" without a final order of removal. *Carbajal*, 43 F. Supp. 3d at 1190.

may request such relief in a future action if circumstances entitle him to such relief at that time.

To the extent the undersigned liberally construes the Petition to raise a claim under *Zadvydas*, Petitioner's detention has not extended beyond the presumptively reasonable six-month period set in *Zadvydas*. He has also failed to meet the *Zadvydas* requirement to establish "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." 533 U.S. at 701. Petitioner has not alleged any institutional barriers to his removal; nor has he shown any obstacles particular to his circumstances that would prevent or delay his removal. *See, e.g.*, *Abiodun v. Mukasey*, 264 F. App'x 726, 729 (10th Cir. 2008) (finding a petitioner was not entitled to relief because there had been "no showing" he would "not be accepted by his homeland of Nigeria"). Accordingly, even to the extent the Petition could be construed to seek release under *Zadvydas*, Petitioner has failed to show there is no significant likelihood of his removal in the reasonably foreseeable future.

## VI. Recommended Ruling and Notice of Right to Object

For the reasons discussed above, the undersigned recommends that the Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 (Doc. 1) be **DISMISSED as moot. The court advises the parties of their right to object to this Report and Recommendation by October 14, 2026**, under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). The Court further advises the parties that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues and terminates the referral to the undersigned Magistrate Judge in the captioned matter.

**ENTERED** this 30th day of September, 2026.

Amanda L. Maxfield
AMANDA L. MAXFIELD
UNITED STATES MAGISTRATE JUDGE